UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

      v.

ISIAH PIERCE and
LARRY WILLIS,

      Defendants.

_____

16-MR-144

## DECISION AND ORDER OF DETENTION PENDING TRIAL

Defendants Isiah Pierce and Larry Willis were charged with (1) conspiring to possess with intent to distribute, and to distribute, 100 grams or more of heroin and 28 grams or more of cocaine base; (2) conspiring to maintain a drug premises; and (3) possessing six firearms during and in relation to drug trafficking crimes. *See* W.D.N.Y. Docket No. 16-MJ-1109, Docket Item 1 (criminal complaint).

Pending before this Court is the government's motion (Docket Item 1),[1] pursuant to 18 U.S.C. § 3145(a), to revoke the order of United States Magistrate Judge Jeremiah J. McCarthy (*see* W.D.N.Y. Docket No. 16-MJ-1109, Docket Items 3 & 9) that the defendants be released on conditions pending trial.

For the reasons set forth below, and in accordance with 18 U.S.C. §§ 3142(e), 3142(g), and 3145(a), the government's motion is GRANTED, and the order of release is revoked.

---

[1] Unless otherwise noted, record citations are to documents filed in this case, W.D.N.Y. Docket No. 16-MR-144.

## PROCEDURAL HISTORY

After Judge McCarthy held a detention hearing on December 13, 2016, he ordered that both defendants be released on $50,000 bail, with conditions. *See* W.D.N.Y. Docket No. 16-MJ-1109, Docket Items 3 & 9. On December 16, 2016, the government filed a "Notice of Appeal" from Judge McCarthy's order—i.e., a Notice of Motion pursuant to 18 U.S.C. § 3145(a)—to this Court. *See* Docket Item 1. On the same day, the government filed a memorandum and exhibits in support of its motion. *See* Docket Items 2 & 3, with exhibits. Defendant Pierce filed opposition papers on December 21, 2016, Docket Item 7, and defendant Willis filed opposition papers on December 22, 2016. Docket Item 8. Later in the day on December 22, 2016, this Court heard oral argument. Docket Item 9.

This Court has reviewed all the papers, exhibits, and evidence submitted by the parties regarding the pretrial detention or release of the defendants, including the transcript of the detention hearing before Judge McCarthy.

## APPLICABLE LAW

**A.   Review of a Detention Order**

"If a person is ordered released by a magistrate judge, . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a). The standard of review is *de novo*. *United States v. Minnici*, 128 F. App'x 827, 828 n.1 (2d Cir. 2005) (Summary Order) (citing *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)). When conducting this review, "the district court may rely on

the record of the proceedings before the magistrate judge and may also accept additional evidence." *United States v. Parker*, 65 F. Supp. 3d 358, 362 (W.D.N.Y. 2014) (quoting *United States v. Marra,* 165 F. Supp. 2d 478, 481 (W.D.N.Y. 2001)).

**B.     Pretrial Detention**

"If, after a hearing pursuant to [18 U.S.C. § 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e)(1). "The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

   (1) the nature and circumstances of the offense charged . . . ;

   (2) the weight of the evidence against the person;

   (3) the history and characteristics of the person, including—

      (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

      (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

   (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Judicial findings under the statute require different standards of proof.  A finding "that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence," 18 U.S.C. § 3142(f); on the other hand, a finding that a defendant poses a risk of flight may be supported by only a preponderance of the evidence.  *See United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011).  But neither finding necessarily needs to be supported by testimony under oath, as it "is well established in [the Second Circuit] that proffers are permissible both in the bail determination and bail revocation contexts." *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000).

Additionally, because the criminal complaint charges both defendants with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," 18 U.S.C. § 3142(e)(3)(A), as well as an "offense under section 924(c) [of Title 18]," 18 U.S.C. § 3142(e)(3)(B), there is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community."  *See* 18 U.S.C. § 3142(e)(3).[2]  The Second Circuit recently summarized the effect of this presumption:

> Such a presumption shifts to the defendant "a limited burden of production—not a burden of persuasion" to adduce "evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes,* 254 F.3d 433, 436 (2d Cir. 2001).  Such production does not eliminate the presumption; rather, the presumption "remains a factor to be considered among those weighed by the court," . . . "however, the government retains the ultimate burden of persuasion." *United States v. English,* 629 F.3d at 319 (internal quotation marks omitted).

---

[2] Either of these two statutory prerequisites gives rise to the presumption.

*United States v. Artis*, 607 F. App'x 95, 96–97 (2d Cir. 2015) (Summary Order).

## **FINDINGS AND CONCLUSIONS**

With regard to the nature and circumstances of the alleged offense, the defendants are charged with serious drug and firearm offenses. As noted above, this subjects the defendants to the rebuttable statutory presumption in favor of detention. *See* 18 U.S.C. § 3142(e)(3)(A). As also noted above, this presumption remains a factor for the district court to weigh even if—and after—a defendant meets his burden of production, although the government retains the ultimate burden of persuasion. *See Artis*, 607 F. App'x at 96-97.

In this case, significant quantities of controlled substances and drug paraphernalia (cutting agents, packing materials, etc.) were recovered from the alleged drug premises (a house with upper and lower apartments). The controlled substances themselves are dangerous—in particular, heroin is a scourge in this community that is claiming many lives. But beyond that, the firearms that the defendants allegedly possessed in connection with their drug operation are especially worrisome. In the alleged drug premises, the government recovered six firearms. The handles of some firearms were covered in electrical tape, suggesting that they were ready to be used in criminal activity, with the tape—and fingerprints on it—able to be removed easily. Two of the firearms were semi-automatic rifles. Multiple firearms, including one of the rifles (apparently a United-States-marketable AK-47 clone), also appear to have been loaded with high-capacity magazines in violation of New York law. Possessing such firearms

during and in relation to the alleged drug trafficking crimes is very serious and weighs heavily in favor of detention.

With regard to the strength of the proof, the defendants both had keys to the front door of the alleged drug premises. Willis also had a key to the lower apartment, while Pierce also had a key to the upper apartment. Surveillance placed both defendants at the premises. A vehicle registration in Willis's name was found in the lower apartment, while other personal items apparently connected to both defendants, including clothes and photographs of the defendants, also were found on the premises. Then, after the defendants were arrested, drugs were found near their persons in their holding cells. The packaging of the drugs matched the packaging materials in the drug premises.

Overall, the evidence strongly suggests that the two defendants were working together to distribute drugs from the premises and were not, for example, merely customers of another drug operation. Nor were they merely neighbors of each other, since both apartments apparently functioned together as one drug premises. The largest quantity of drugs was found in the upper apartment with the drug paraphernalia found in the lower, so the drugs appear to have been stored in the upper apartment and packaged in the lower apartment. Moreover, according to the government's proffer, ammunition found in the lower apartment could be used only in a firearm found in the upper apartment.

Although the evidence may be stronger against Willis than Pierce since the keys to the apartment may have been on a key ring with the ignition key to Willis's car, Pierce was at least trusted enough to carry keys to the house and to the apartment storing the

drugs and to Willis's vehicle. Moreover, the $1,790 in cash and the drugs (with packaging matching the materials in the premises) found on or near Pierce's person further connect him to the distribution operation. And the fact that Pierce had that much cash when he was unemployed and when the Pretrial Services Report stated that he had a negative cash flow evidences his connection to the drug operation as well. Indeed, at oral argument his attorney acknowledged that the proof might suggest that Pierce was dealing in drugs, albeit at a small-time level.

With regard to their history and characteristics, both defendants have serious prior convictions. Willis has a prior firearm conviction and currently is facing a firearm charge in state court. In fact, he was on bail in connection with that charge when he was arrested on the charges at issue—a factor that the statute explicitly directs the court to consider in deciding whether to release a defendant on bail. *See* 18 U.S.C. § 3142(g)(3)(B). When probation asked him if he had ever violated the terms of probation or parole, Willis said no. But in addition to his bail being revoked on the state charge as a result of this case, the pretrial services report shows a history of at least two other parole revocations.

As for Pierce, his pretrial services report lists several convictions, including one for a Class A felony under New York State law. The report also indicates that he was arrested several times while on bail, probation, parole, or pending sentence, and that in addition to Isiah Pierce, he has used the names Isiah Johnson, Isiah Watson, and Izell Pierce. The reports also states that Pierce reported that he was last employed—part

time at a fast food restaurant—in 2014, but that he admitted possessing about $2,000 at the time he was arrested.

In sum, the history and characteristics of both defendants (which includes reoffending while on parole or bail) combined with the nature and circumstances of the offenses at issue (firearms allegedly possessed during and in relation to drug trafficking crimes, as well as the trafficking of drugs, *see United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985)) indicates a significant danger to the community if they were to be released pending trial. There also is a significant risk of flight, considering the defendants' histories (including both defendants' multiple release violations and Pierce's several aliases) and the potential sentence of incarceration they will face in connection with these charges. *See United States v. Sabhnani*, 493 F.3d 63, 76 (2d Cir. 2007). Indeed, both the firearm offense and the drug conspiracy offense, as currently charged in the complaint, carry mandatory minimums. *See* 18 U.S.C. § 924(c)(1)(A); 21 U.S.C. § 841(b)(1)(B).

For the reasons set forth above, the Court finds that there is clear and convincing evidence that no condition or combination of conditions will reasonably assure the appearance of the defendants as required[3] and the safety of any other person and the community. Therefore, the government's motion (Docket Item 1) seeking to revoke the detention order of United States Magistrate Judge McCarthy is GRANTED, and the defendants are hereby ordered detained pending trial.

---

[3] This finding of flight risk need be based on only a preponderance of the evidence. *See English*, 629 F.3d at 319.

IT IS FURTHER ORDERED that the following directions regarding detention be implemented:

1. The defendants are committed to the custody of the Attorney General or her designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. The defendants shall be afforded reasonable opportunity for private consultation with defense counsel; and

3. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the defendants are confined shall deliver a defendant or the defendants to a United States marshal for the purpose of an appearance in connection with a court proceeding.

SO ORDERED.

Dated:  December 23, 2016
        Buffalo, New York

*s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE